# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| CHRISTIE M. MEHRING-CRUZ, | No. 16-CV-00184-LTS |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Claimant, Christie M. Mehring-Cruz (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Claimant has also filed a Title XVI application for supplemental security income which was also denied. Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I.     BACKGROUND

Claimant was born in 1974 and was 41 years old at the time of the ALJ's decision to deny benefits. Claimant attended college from 2001 to 2003 and completed a diploma for computer services, but could not obtain an associate's degree due to her learning disability in math. (AR 284). Between 2001 and 2014, claimant worked in a restaurant, client services, and education and childcare, with gaps in between each job. (AR 285). Claimant's wages varied from $3.09 to $14.01 hourly. (*Id.*). Claimant last worked in

August 2014 when she was employed in a childcare position. (AR 40). Claimant complained of difficulty throughout her employment history due to fatigue, joint pain, depression, insomnia, sleep apnea as well as muscle and joint pain. (AR 290).

On September 13, 2014, claimant filed an application for disability benefits that was denied initially and upon reconsideration. (AR 239). The claim was for disability beginning August 30, 2014. (AR 19). Claimant timely filed a Request for Hearing and a hearing was held on November 18, 2015, before the Administrative Law Judge (ALJ).

On April 15, 2016, the ALJ found that claimant's severe impairments included systemic lupus erythematosus (SLE) with interstitial lung disease; generalized affective disorder; major depressive disorder; posttraumatic stress disorder (PTSD); and panic disorder. (Doc. 12 at 2). The ALJ determined that claimant was unable to perform past relevant work as a day care worker and teacher's aide. *(Id.)*. The ALJ further determined that there was other work claimant could perform such as addresser, document preparer, and bench assembly. *(Id.)*. As a result, the ALJ determined claimant was not disabled and not entitled to benefits. Claimant appeals the ALJ decision, claiming the ALJ improperly rejected claimant's subjective allegations and failed to give appropriate weight to the opinions of claimant's providers. (Doc. 13).

Claimant timely requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied review on August 23, 2016. (AR 1). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981. On October 24, 2016, claimant filed a complaint in this court. (Doc. 3). The parties have briefed the issues, and on July 27, 2016, this case was deemed fully submitted. (Doc. 14). On May 10, 2017, this case was referred to me for a Report and Recommendation.

## II.   DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If claimant is engaged in substantial gainful activity, then claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves significant mental or physical activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of claimant's physical and medical impairments. If the impairments are not severe, then claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." *(Id.)*. § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If claimant can still do his/her past relevant work, then he/she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of claimant's physical ability to perform exertional tasks or, in other words, what claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646

(8th Cir. 2003) (internal quotation marks and citations omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). Claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *(Id.)*. If a claimant retains enough RFC to perform past relevant work, then claimant is not disabled. *(Id.)*. § 404.1520(a)(4)(iv).

Fifth, if claimant's RFC, as determined in Step Four, will not allow claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work claimant can do, given claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If claimant can make the adjustment, then the Commissioner will find claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 404.1545(a)(3). The burden of persuasion to prove disability remains on claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of claimant's limitations without the substance use. *(Id.)*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and claimant is not disabled. 20 C.F.R. § 404.1535.

### III.    THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in his written decision.

At Step 1, the ALJ found claimant has not engaged in substantial gainful activity since August 30, 2014, the alleged date of onset of disability.   Although there were attempts at work since August 30, 2014, they were short lived and did not amount to substantial gainful activity.  (AR 21).

At Step 2, the ALJ determined claimant had the following severe impairments: "systemic lupus erythematosus (SLE) with interstitial lung disease; generalized affective disorder; major depressive disorder; posttraumatic stress disorder (PTSD); and panic disorder."  (AR 22).  The ALJ found other claimed impairments that were listed in the record from time to time but they did not cause significant limitation of functioning, or did not last for a continuous period of 12 months.  (AR 22-23).

At Step 3, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *(AR 23-24).*  Because of this, disability could not be established based on medical facts alone. (20 C.F.R. Pt. 404.1520(d) and 416.920(d)).  The ALJ found claimant had the following "paragraph B" criteria limitations: mild difficulties in activities of daily living; moderate difficulties in social functioning; moderate difficulties with concentration, persistence of pace and no episodes of decompensation.  (AR 24).  The ALJ did not find any 'paragraph C" criteria. (*Id.*).

At Step 4, the ALJ determined claimant's residual functional capacity. The ALJ found that "claimant has the residual functional capacity to perform sedentary work" with the following restrictions:

> [Claimant] can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can stand or walk for a total of four hours of an eight hour workday and sit for a total of six hours of an eight hour workday. Claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. She can frequently balance, occasionally stoop, kneel, crouch and crawl. Claimant cannot reach overhead with the bilateral upper extremities. She should avoid concentrated exposure to vibration, and extremes of cold, heat, humidity, wetness and pulmonary irritants such as cigarette smoke, solder, cleaners, dust and chemicals. She is limited to simple work-related decisions and occasional workplace changes. Claimant can have only occasional contact with the public, coworkers and supervisors.

(AR 24). Still in Step 4, the ALJ determined claimant was unable to perform any past relevant work. (AR 36).

Accordingly, in Step 5, the ALJ determined, based on expert testimony from a vocational expert, that claimant would be able to perform the following sedentary jobs; addresser, document preparer, and bench assembly. (AR 37-38).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as

"something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.

1992)).  The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted).  *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (Internal citation omitted)).

## V.    MEDICAL RECORDS REVIEW

Claimant has been treated by the following providers: Dr. Rebecca Tuelken, rheumatologist for SLE, Dr. Imane Bentahar, family medicine for depression and insomnia, Dr. Robert Silber, gastroenterology, Dr. Suraj Bopana, pulmonologist for emphysema and lung nodules, and therapist Keri Christensen.  (AR 387).  Claimant takes daily medication for depression, to control SLE, and steroids for joint inflammation.  (AR 388).  Dr. John Brownell assumed the role of family physician when Dr. Bentahar moved out of the area.

Rosemarie Camacho, M.A., a therapist in Guam, counselled claimant from March 31, 2011, until May 10, 2013, for severe depression and PTSD.  (AR 404-457).  On Ms. Camacho's intake form and follow-up visits, she indicated claimant's cognitive function was intact.

Dr. Bentahar treated claimant from July 31, 2014, until July 20, 2015.  (AR 460-471, 514-521).  The primary initial diagnosis was SLE, which had been in remission until that point.  (AR 465).  At the first visit, claimant complained of joint swelling, however the physical examination was normal except for joint tenderness.  There were no findings of stiffness, weakness or limitations in range of motion.  (AR 468).  On August, 18, 2014, claimant still complained of body aches and joint pain and she had been placed on Plaquenil by Dr. Michael Brooks, a rheumatologist.  Her physical exam was normal that day as well as on the follow up appointment on August 25, 2014.  (AR

462). On October 21, 2014, claimant was seen for a complete physical; the examination that day is documented as normal, including no joint swelling and normal mood and affect, behavior, thought and judgment. (AR 676). On October 30, 2014, claimant was seen for upper respiratory infection symptoms; musculoskeletal, psychiatric and neurologic examinations that day are documented as normal. (AR 686).

Claimant was next seen by Dr. Bentahar on December 22, 2014, for symptoms of depression. Physical examination that day was normal and her depression medication was switched to Celexa. Claimant had a follow-up on January 9, 2015, where the Celexa dosage was increased. There was no change in any symptoms or physical examination on February 3, 2015. Dr. Bentahar referred claimant to University of Iowa Hospital and Clinics ("UIHC") rheumatology because she felt Dr. Brooks' staff did not communicate appropriately with her. On April 13, 2015, claimant was seen for diarrhea; a musculoskeletal, psychiatric and neurologic examination that day is documented as normal. (AR 742). A CT scan of the abdomen was ordered and revealed an incidental finding of adrenal adenoma, hepatic cysts and the pulmonary nodules that was previously diagnosed and stable. (AR 749). On a follow-up appointment on April 20, 2015, gastrointestinal issues were found to be better and claimant was referred to endocrinology due to the finding of adrenal adenoma. (AR 764).

Claimant next saw Dr. Bentahar on May 2, 2015. Active medical issues reviewed were gastrointestinal symptoms, the CT finding of pulmonary nodules, stress and anxiety, follow up for past breast mass, adrenal mass, and thyroid. In review of systems, claimant denied anxiety or nervousness but did complain of joint pain. Her neurologic and musculoskeletal exams were normal but she exhibited a depressed mood. The next visit was June 4, 2015, where smoking cessation was discussed. Claimant believed that the Plaquenil which was prescribed to treat her SLE was causing the gastrointestinal symptoms. On July 2, 2015, claimant had a follow appointment with Dr. Bentahar where

she noted that the symptoms of depression had improved. At this appointment, claimant complained of insomnia possibly due to the prednisone, but symptoms were improving as she tapered down off the prednisone. Her mood was normal on examination that day.

On October 10, 2015, claimant first saw Dr. Brownell, who assumed claimant's primary care. Dr. Brownell noted that claimant's depression was under fairly good control and the SLE was under fair control. Physical and mental examinations that day were normal, including an extensive mental status exam. (AR 845). During a follow-up appointment on October 28, 2015, claimant's depression was found to be under fairly good control and she was doing better with the PTSD. Her physical and mental examination remained normal.

Dr. Brooks saw claimant on several occasions between August 7, 2014, and November 7, 2014. (AR 478-505). Dr. Brooks confirmed her past diagnosis of SLE. On his physical exam of August 7, 2014, he found range of motion of all joints were normal without indication of active inflammation. Neurologic exam and ambulation were normal. That day, Dr. Brooks put claimant back on SLE medication, but did not confirm active SLE flare up. On a follow-up appointment with Dr. Brooks on September 15, 2014, claimant's pain was self-reported as an 8 on a scale from 1 to 10, with 10 being the worst. A physical exam that day showed normal results except for tenderness at claimant's joints. Claimant was given an injection of steroids and further testing was ordered. Claimant returned to Dr. Brooks on November 7, 2014; on that day he felt claimant's symptoms were due to a viral infection rather than SLE.

Dr. Stientjes, a psychologist, performed a psychodiagnostic mental status exam on December 2, 2014. (AR 509). The mental status exam that day found claimant anxious and distracted but otherwise awake, alert and oriented. Claimant's daily activities were noted as reading the Bible, cooking, using the computer, and cleaning. Dr. Stientjes opined that claimant's symptoms were consistent with Obsessive-Compulsive Disorder,

Major Depressive Disorder, PTSD, and Panic Disorder with agoraphobia. Dr. Stientjes assigned claimant a Global Assessment of Functioning score of 48 which classifies symptoms as serious. (AR 511).

Dr. Silber, a gastroenterologist, treated claimant from December 9, 2014, until February 19, 2015. Dr. Silber evaluated and treated claimant for bowel changes and associated weight loss. After his work-up which included upper endoscopy, claimant tested positive for intestinal infection with H. Pylori and was referred to an infectious disease specialist. (AR 522-542). Claimant was seen by an infectious disease specialist on March 20, 2015, and antibiotics were started. (AR 545). Claimant had an oral fungal overgrowth due to the antibiotics, and was treated with an antifungal rinse. (AR 562). Claimant did see a GI specialist at UIHC on April 11, 2016, who restarted antibiotic therapy for intestinal bacterial overgrowth. (AR 939).

Laboratory test results for infection as well as inflammatory markers that are present in SLE were reviewed from dates 3/30 and 3/31/17. One laboratory test marker associated with SLE was positive, but the remainder of the tests were negative. (AR 553).

Keri Christensen, licensed independent social worker, wrote a letter on April 1, 2015, stating claimant is unable to focus due to symptoms of anxiety and depression. (AR 583). On May 11, 2015, Ms. Christensen completed a Medical Source Statement on behalf of claimant. (AR 617). The statement noted that claimant had been counseled by Ms. Christensen bimonthly since February 26, 2015, for symptoms of depression, anxiety and panic attacks. Ms. Christensen was not able to comment on claimant's mental abilities and aptitude. (AR 619). Ms. Christensen did comment that claimant had two panic attacks at work and has moderate restriction of activities of daily living. She also opined that claimant would be absent from work more than four days a month due to her impairment.

On April 28, 2015, claimant saw pulmonologist Dr. Bopana. Dr. Bopana strongly encouraged claimant to quit smoking and ordered a chest CT. Dr. Bopana saw claimant again on August 27, 2015. He evaluated claimant's lung nodules and noted that claimant had partially quit smoking. (AR 871). He also noted claimant had an asymptomatic mild ventilation defect that was observed on pulmonary function testing. (AR 881). A CT scan of the chest performed on August 25, 2015, showed that the pulmonary nodules were stable. (AR 894). Claimant had a followed-up appointment with Dr. Bopana on February 23, 2016; she did not have specific pulmonary complaints, and Dr. Bopana noted the lung nodules were stable. (AR 956).

Dr. Tuetken, a rheumatologist at the UIHC, treated claimant from March 20, 2015, through January 12, 2016. For the March 30, 2015, initial office visit only the last page was available; the plan was to restart vitamin D. On June 26, 2015, Dr. Tuetken noted that claimant did not have improvement in her symptoms despite new medications. Claimant continued to experience widespread pain and joint stiffness, difficulty sleeping and numbness on right side if she lied on it. (AR 624). On physical exam that day, there was some limitation in range of motion around shoulders and right groin due to pain. Lab values were normal including markers for active inflammation. Prednisone was started and the possible diagnosis of central sensitization (fibromyalgia) was considered.

Dr. Tuetken next evaluated claimant on August 25, 2015, where it was documented that SLE symptoms were stable and claimant requested to lower her dose of prednisone due to symptoms of aggression and aggressive behavior. (AR 811). Dr. Tuetken filled out a Physical Medical Source Statement dated October 27, 2015, for diagnoses SLE, fibromyalgia, irritable bowel syndrome and vitamin deficiency. (AR 830). Dr. Tuetken wrote that the affected joints were the shoulders, and Dr. Tuetken checked a box that indicated claimant needs a job that permits shifting positions at will from sitting, standing or walking. Dr. Tuetken also indicated that claimant may

13

sometimes need a cane or other assisted device when walking. Dr. Tuetken wrote that claimant's prognosis was good and she can walk more than six city blocks, sit more than two hours at time and stand up to thirty minutes at a time. (AR 833). Dr. Tuetken indicated that 20% of the time claimant would likely be "off task" but is capable of low stress work. Dr. Tuetken estimated that claimant would be off work as a result of this impairment about one day per month and also notes that all these limitations are based on claimant's subjective complaints. (AR 834).

Claimant next saw Dr. Tuetken on January 12, 2016, as a scheduled follow-up appointment. Joint pain was described as mild and overall impression was SLE is stable. (AR 934).

Shawn Stepp, a Licensed Mental Health Counselor, saw claimant on November 19, 2015, for the diagnoses of Major Depressive Disorder and PTSD. Mental status observations that day showed normal function other that becoming tearful. Insight was rated as fair to poor and judgement was rated as fair. The next mental health evaluation was on November 20, 2015, with Nan Amboy, a nurse practitioner. (AR 908). Claimant reported a dysphoric mood and her anxiety was described as mild. Mental status examination that day did not reveal significant abnormality or impairments. A follow-up appointment with Mr. Stepp took place on January 21, 2016, where claimant's medication dosages were adjusted. On February 26, 2016, a new medication, Rexulti, was started; the examination that day showed claimant was stable. (AR 925)

Claimant submitted additional medical records after the ALJ decision. (AR 14). These records describe gastrointestinal complaints addressed at the UIHC on May 4, 2016. Claimant was taking antibiotics and was treated for oral fungal overgrowth due to the antibiotics.

# VI.  DISCUSSION

Claimant argues the ALJ's residual functional capacity assessment is flawed for four reasons:

1. The ALJ failed to evaluate properly the work related limitations from treating rheumatologist Dr. Rebecca Tuetken.  (Doc. 13, at 3).

2. The ALJ failed to evaluate properly the opinions of claimant's therapist, Keri Christiansen, LISW.  (Doc. 13, at 8).

3. The ALJ's residual functional capacity assessment is not supported by substantial medical evidence from a treating or examining source.  (Doc. 13, at 16).

4. The ALJ discounted claimant's subjective allegations without identifying inconsistencies in the record as a whole.  (Doc. 13, at 18).

I will address these arguments separately below.

## A.  *The ALJ's evaluation of the work related limitations from treating rheumatologist Dr. Rebecca Tuetken.*

Claimant argues the ALJ erred in his RFC assessment when he failed to evaluate properly the work related limitations from treating rheumatologist Dr. Rebecca Tuetken. (Doc. 13, at 3).  An ALJ must give a treating physician's opinion controlling weight, but only if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other medical evidence.  *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007).  An ALJ need not give any weight to a treating physician's opinions that a claimant is disabled as that is a conclusion reserved to the Commissioner to make.  *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (doctor's opinion that claimant is disabled involves issue reserved to Commissioner and is not the type of medical opinion to which Commissioner gives controlling weight).

The ALJ reviewed and analyzed the Physical Medical Source Statement completed by Dr. Tuetken on October 27, 2015. (AR 834). The ALJ found that Dr. Tuetken stated that claimant is capable of low stress work, her impairment was likely to produce good days and bad days, and she would likely be absent one day per month. Additionally, Dr. Tuetken stated that claimant had none or only mild limitation in activities of daily living, but moderate limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace. (AR 30). The ALJ recognized that the opinion of the treating physician is entitled to great weight unless there is persuasive contradictory evidence. (SSR 96-2p). However, physician statements that a claimant is "disabled" or unable to "work" does not weigh against an adverse ALJ finding because these are legal findings and physicians are not basing their statements on legal standards or codified regulations. (AR 31). To the extent any of Dr. Tuetken's physical limitations were influenced or answered by claimant, the ALJ properly discounted them. As the ALJ found claimant incredible, the ALJ was permitted to discount Dr. Tuetken's opinions to the extent that it "relied" on her subjective complaints. *Julin v. Colvin,* 826 F.3d 1082, 1089 (8th Cir. 2016) ("Because the ALJ declined to credit Julin, the ALJ was entitled to discount Dr. Welsh's opinions insofar as they relied on Julin's subjective complaints") (citing *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) and *Kirby*, 500 F.3d at 709). The ALJ found Dr. Tuetken's work absence limitation speculative, based on paucity of evidence in records of exacerbations, symptom flares, or other findings that would support such an opinion and the relatively normal physical exams that are documented. *(Id.)*. Finally, the ALJ found that Dr. Tuetken's statement does conform to the ALJ's finding of residual functional capacity consistent with sedentary capacity work. *(Id.)*.

Claimant claims that the ALJ's residual functional capacity assessment materially differs from Dr. Tuetken's limitations in that Dr. Tuetken noted that claimant needed a

job that permitted shifting from sitting, standing, or walking at will. Dr. Tuetken opined that claimant would be off task 20% of a work day due to symptoms severe enough to interfere with attention and concentration, and Dr. Tuetken opined that claimant be limited to low-stress work.

The ALJ stated that his residual functional capacity assessment integrated the records as a whole. The ALJ further stated that each individual assertion found in Dr. Teutken's Medical Source Statement (dated October 27, 2015, (AR 830)) was considered individually as to whether that assertion was supported or contradicted by the record. The ALJ found that Dr. Tuetken's assertions that (1) claimant required frequent shifting and (2) claimant would likely be off task 20% of a work day is not supported by objective findings in Dr. Tuetken's medical records or the records as a whole. (AR 813). Dr. Tuetken stated that her opinion regarding claimant's limitations was based mainly on claimant's subjective complaints. *See* AR 835 ("Her limitations are mainly subjective."). *Minney v. Berryhill,* No. 16-CV-00175-LTS, 2017 WL 2110767, at 9 (N.D. Iowa May 15, 2017) (holding that ALJ was entitled to decline to give controlling weight to treating physician's opinions on claimant's work-place limitations in proceeding to obtain supplemental security income (SSI), where opinions relied on claimant's subjective complaints). As discussed below, in the analysis of claimant's fourth argument, the ALJ identifies instances where claimant's testimony contradicts the record, and concluded that claimant was not fully credible. (AR 36).

The ALJ's residual functional capacity assessment included restrictions of work limited to simple work-related decisions and occasional workplace changes, and only occasional contact with the public, coworkers and supervisors. I find these restrictions are consistent with the low stress work suggested by Dr. Teutken. (AR 834).

I find the ALJ properly acted within his zone of choice in weighing the work related limitations opined by treating rheumatologist Dr. Rebecca Tuetken. The ALJ relied on the statements of Dr. Teuken in his residual functional capacity analysis and furthermore he explained how the residual functional capacity analysis substantially conforms to Dr. Tuetken's statement. The ALJ conducted an adequate analysis in the areas of his residual functional capacity assessment that did not conform to that of Dr. Tuetken. (AR 834). Therefore, I find the ALJ did not err here.

### B. The evaluation of the opinions of claimant's therapist, Keri Christiansen.

Keri Christiansen, who counseled claimant for psychiatric and behavioral issues, submitted two statements regarding claimant's work ability. Ms. Christensen counselled claimant mainly for crises intervention related to the diagnoses of depression, anxiety, and panic attacks. On May 11, 2015, Ms. Christensen opined that claimant's impairments or treatment would cause her to be absent from work more than four days a month. Claimant would have difficulty working at a regular job on a sustained basis, according to Ms. Christensen, due to her anxiety and panic, and would have marked difficulties in maintaining concentration persistence or pace and difficulties in maintaining social functioning. (AR 621). On October 12, 2015, Ms. Christensen reviewed her prior statement on May 11, 2015, and Ms. Christiansen's opinions were the same. (AR 669). Ms. Christensen opined that she was not able to comment on claimant's mental abilities and aptitude. (AR 619). Ms. Christensen did comment that claimant had two panic attacks at work and had moderate restriction of activities of daily living. She also opined that claimant would be absent more than four days a week due to her impairments.

In reviewing Ms. Christensen's Medical Source Statement of May 11, 2015, and affirmation of October 12, 2015, the ALJ noted that, as a social worker, Ms. Christensen is not an acceptable medical source and this opinion, standing alone, could not constitute documentation of severe or disabling vocational limitations. (AR 34). The ALJ stated

that Ms. Christensen's report had been "considered" with respect to severity and effect on function pursuant to Social Security Ruling 06-3p. (AR 34).

Claimant argues that the ALJ failed to explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. (Doc. 13, at 10). I find the ALJ adequately explained the reasoning and weight given to the evidence concerning the diagnoses of depression, anxiety, and panic attacks. The ALJ found that the degree of severity of claimant's subjective symptoms were not supported by objective medical evidence in the records, in accordance with 20 C.F.R. § 416.929. (AR 35). *See Julin,* 826 F.3d at 1086. Therefore, I find the ALJ properly considered Ms. Christensen's opinion and adequately described the review of the sources used as well as his reasoning.

**C.** ***Whether the ALJ's residual functional capacity assessment was supported by substantial medical evidence from a treating or examining source.***

Claimant argues the ALJ rejected the opinions of her treating providers without fully and fairly developing the record by obtaining limitations that supported his decision from a treating or examining source. (Doc. 13, at 16-18). Claimant further argues that without such evidence, the ALJ's residual functional capacity assessment is not supported by the required substantial evidence. (Doc. 13, at 16). *See Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000)(holding that the residual functional capacity to perform other work is based upon all the record evidence; however, record must contain some medical evidence that supports finding of residual functional capacity by administrative law judge (ALJ). Claimant argues the ALJ improperly relied on the opinion of a non-examining state agency psychological consultant. (Doc. 13, at 17).

The opinions of non-examining state agency consulting physicians normally cannot constitute "substantial evidence" in support of an ALJ's decision when those opinions

directly conflict with the opinions of treating or examining sources. *See*, *e.g.*, *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) ("The opinions of non-treating practitioners who have attempted to evaluate claimant without examination do not normally constitute substantial evidence on the record as a whole.") (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)); *Dixon v. Barnhart*, 324 F.3d 997, 1002-03 (8th Cir. 2003) (holding that "[g]iven the contradicting recommendations in the record and the insufficiently developed record surrounding Dixon's cardiac problems, [the non-examining consulting physician's] opinion does not constitute substantial record evidence that Dixon can perform medium work.") (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). When, however, assessments of state agency medical consultants are consistent with other medical evidence in the record, these assessments can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08. Indeed, an ALJ may rely on a state agency consulting physician's opinion even when that opinion conflicts with the opinion of a treating physician. *See Ponder v. Colvin*, 770 F.3d 1190, 1194-95 (8th Cir. 2014) (concluding that three non-examining consulting physician's opinions trumped a treating physician's opinion). An ALJ may ultimately base an RFC assessment on medical evidence, even in the absence of any medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2013). It is the ALJ's duty to weigh the medical evidence. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotation marks and quotation omitted).

Here, claimant misstates the record by suggesting the ALJ based his RFC assessment only on non-examining consulting physicians. The ALJ actually assigned great weight to the opinion of Dr. Tuetken, claimant's treating physician. The ALJ did not rely merely on the opinions of non-treating non-examining physicians reviewing reports of treating physicians for his RFC determination. Indeed, the ALJ's RFC

assessment largely mirrors the recommendations of Dr. Tuetken, who also recommended that claimant can tolerate low stress work. (AR 834). The ALJ did not discount Dr. Tuetken's evaluation as non-reliable. The ALJ weighed each item in Dr. Tuetken's evaluation against the record, specifically those items where claimant's subjective complaints were the main source of her evaluation. (AR 23). Therefore, I find the ALJ's residual functional capacity assessment is supported by the required substantial medical evidence, and has combined specific medical opinions and reconciliation of those opinions with the medical records. *See Fentress v. Berryhill,* 854 F.3d 1016, 1017 (8th Cir. 2017).(holding that the Court will uphold a decision to deny benefits if that decision is supported by substantial evidence in the record as a whole).

### D.  The ALJ's assessment of claimant's subjective.

Claimant alleges the ALJ discounted the intensity of her subjective symptoms without detailing the reasons for discrediting the testimony and set forth the inconsistencies found, as required. (Doc. 13, at 18). Claimant disagrees with the ALJ's interpretation of the records as not supporting the severity of claimant's alleged symptoms. (AR 35). Claimant additionally asserts that the ALJ improperly failed to evaluate the submitted third party statements.

Contrary to claimant's argument, the ALJ did detail his reasons for discrediting the testimony and set forth the inconsistencies found. (AR 35, 36). The ALJ concluded that the record contained clear evidence that claimant magnified her symptoms for the purpose of receiving benefits. *(Id.)*. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (internal citation omitted). Accordingly, a court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

Here, the initial Disability Determination explanation for the DIB claim was reviewed by Dr. Stienjes on December 2, 2014, who concluded that claimant's credibility was eroded by inconsistencies of claimant's reported symptoms compared to the records. (AR 101). Jonathan Brandon, Ph.D. completed the Mental RFC on December 24, 2014, and found her psychiatric symptoms generally credible but felt claimant could perform tasks consisting of 3-4 step commands in a work setting with reduced social interactions. (AR 104). Dr. Brandon also reviewed the initial Disability Determination explanation for the DIB claim and also opined that claimant's credibility was eroded by inconsistencies of claimant's reported symptoms compared to the records as previously described. (AR 115). The reconsideration for the DI claim was completed by Myrna Tashner, Ed.D. on April 7, 2015, for the mental evaluation and by John May, MD for the medical portion. Dr. May affirmed the prior determination. Myrna Tashner, Ed.D. affirmed the prior determination including that the mental complaints are generally credible. (AR 136).

In evaluating a claimant's credibility, an ALJ must consider the entire record including the medical records, statements by claimant and third parties, and factors such as: (1) claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In arriving at a credibility determination, an ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Brown v. Astrue*, 4:08-CV-483 CAS, 2009 WL 88049, at *8 (E.D. Mo. Jan. 12, 2009) (quoting *Masterson v. Barnhart*,

363 F.3d 731, 738-39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence." *Id.* (citing *Masterson*, 363 F.3d at 738; *Cline*, 939 F.2d at565). In the end, however, "[t]he determination of a claimant's credibility is for the Commissioner, and not the Court, to make." *Id.* (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall*, 274 F.3d at1218).

Here, the ALJ did not discount claimant's subjective complaints solely because they were not supported by objective medical evidence. Consistent with *Polaski*, the ALJ weighed the record and I find the ALJ adequately detailed inconsistencies found in the record. The ALJ identified instances where claimant's testimony contradicted the record. Specifically, the record of Dr. Brownell of October 28, 2015, contradicts claimant's testimony of panic attacks, and the normal gait examination contradicts her testimony that she stumbles if she stands more than 30 minutes. (AR 36). Furthermore, claimant's self-described activities of daily living are inconsistent with the severity of symptoms to which she testified. (AR 36). The ALJ listed additional factors he weighed in reaching his conclusion as to claimant's credibility: pattern of symptoms, precipitating factors, medications and side effects, treatments and benefit of those treatments, accommodations for symptoms, and functional limitations due to pain. (AR 35).

In my own review of the records, I find that the documented examinations do not describe physical findings that would support disability as defined in 42 U.S.C. § 423(d)(2)(A). *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (holding ALJ's adverse credibility determination for claimant was supported by substantial evidence including ALJ's finding that claimant's alleged limitations were inconsistent with his daily activities). I find there was substantial evidence on the record as a whole to support the ALJ's decision to discount the weight given to claimant's description of the intensity, persistence, and functionally limiting effects of her impairments.

I therefore conclude the ALJ did not err in finding that the alleged severity of the symptoms to which claimant testified were not supported by the record.

## VII. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the ALJ's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 9th day of June, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa